IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| **v.** ) | **Criminal No. 2:07cr00004** |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **ROBERT FRANKLIN DOYLE JR.**, ) | |
|     Defendant ) | |

*I. Background*

This case is before the court on the motions of the defendant, Robert Franklin Doyle Jr., to suppress certain evidence seized in a January 9, 2004, search of his residence, (Docket Item Nos. 47 and 80) ("Motions"). The Motions are before the undersigned magistrate judge by referral pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a hearing on the Motions on September 11 and 12, 2007. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

*II. Facts*

Doyle was originally charged in a two-count indictment with receipt and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(2) and 2255A(a)(5)(B). A five-count superseding indictment was returned September 11, 2007. The superseding indictment contains the two original charges, in addition to three counts of shipping child pornography in interstate commerce in

-1-

violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1). These federal charges arise as a result of evidence seized in a January 9, 2004, search of Doyle's Rose Hill, Virginia, residence by the Lee County Sheriff's Department. This search was incident to a January 8, 2004, warrant issued by Lee County state court Magistrate Jim L. Burke.

The Affidavit For Search Warrant filed with Magistrate Burke was sworn to by Captain Charles Taylor Scott, Lee County Sheriff's Department Chief Investigator, (Docket Item No. 81, Exhibit A) ("Affidavit"). The Affidavit states that a search of the defendant's residence was requested in relation to the offense of possession of child pornography in violation of Virginia Code § 18.2-347.1:1.[1] The Affidavit states that the things to be searched for were:

> Any and all materials, books, magazines, pictures, videos that are of a sexual nature involving any minor child. Also any communication system that could be used to facilitate a sexual offense against a child. (computer)

The Affidavit states that "[t]he material facts constituting probable cause" were:

> Three minor children have come forward and stated that Robert Doyle Jr. has sexually assaulted them at the Doyle residence. One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children.

The Affidavit also states:

---

[1]The offense of possession of child pornography is actually found at Virginia Code § 18.2-374.1:1. This appears to be nothing more than a typographical error.

-2-

Case 2:07-cr-00004-JPJ-PMS   Document 87   Filed 09/14/07   Page 2 of 17   Pageid#: 158

> I was advised of the facts set forth in this affidavit in whole or in part, by an informer. This informer's credibility or the reliability of the information may be determined from the following facts:
>
>> Detailed Victim statements of the assault and of the Doyle residence, where victims describe the assailants [sic] bedroom and, vehicle he drives and description of the home. Which has all been verified by Sheriffs Dept.

At the suppression hearing, Captain Scott testified that he and Lieutenant Fred Rouse, an investigator with the Lee County Sheriff's Office, appeared before Magistrate Burke on January 8, 2004, in an effort to obtain the warrant to search Doyle's home. Both Scott and Rouse testified that Rouse had investigated the allegations that Doyle had sexually assaulted these three minor boys. Scott testified that he had conducted no independent investigation into these allegations or whether the information Rouse had provided him regarding the investigation was true. Rouse testified that he also prepared the Affidavit. Despite these facts, however, both Scott and Rouse testified that Scott, as Rouse's supervisor, had chosen to sign the Affidavit. Rouse testified that Scott chose to do so for "political" reasons because it was an election year and the defendant came from a large influential Lee County family. He further stated that the defendant's family had voiced concerns that the investigation of the defendant was being pursued as a personal vendetta by Rouse.

Scott, who recently was involved in an ATV accident resulting in a head injury which has affected his memory, testified that he could not remember whether he had read the Affidavit before he signed it under oath attesting to its accuracy. In fact, Scott admitted that it was "entirely possible" that he did not read the Affidavit before he signed it because he was fully relying on the investigation performed in the matter

-3-

Case 2:07-cr-00004-JPJ-PMS   Document 87   Filed 09/14/07   Page 3 of 17   Pageid#: 159

by Rouse. Scott testified that he never personally conducted any interviews with any of the witnesses or victims in the case, although it was possible that he had watched Rouse conduct at least one victim interview from his desk or that he had watched the videotape recordings of one of the victim's interviews.

Both Scott and Rouse testified that Magistrate Burke had a number of questions concerning the Affidavit as presented. Both men stated that the only question Magistrate Burke asked of Scott was an inquiry as to why he, and not Rouse, had signed the Affidavit. Both men testified that Rouse, who was never placed under oath by Magistrate Burke, answered the remaining questions, including questions with regard to whether the information contained in the Affidavit was stale. Scott further testified that, as a law enforcement officer, he knew that a magistrate could not rely on unsworn testimony in determining whether probable cause existed to issue a search warrant. Rouse admitted that, before this date, he had always been placed under oath before offering oral evidence in support of an affidavit for a search warrant. He also admitted that, before this date, he had never had a magistrate consider unsworn evidence in support of an affidavit for a search warrant.

Scott testified that he was the officer who executed the search warrant on Doyle's residence. A copy of the search warrant return was admitted into evidence at the suppression hearing. (Defense Exhibit 1.) The return shows that officers conducted the search of Doyle's residence on January 9, 2004, and seized a computer, miscellaneous computer disks, papers and photographs and a "lock box." The government asserts that a forensic examination of the hard drive of this computer revealed that it contained numerous images which constitute child pornography, which

-4-

Case 2:07-cr-00004-JPJ-PMS    Document 87    Filed 09/14/07    Page 4 of 17    Pageid#: 160

are the basis of the federal charges against Doyle.

Rouse testified that in early August 2003, Edward J. Jones came into the Lee County Sheriff's Office requesting to speak to an officer. Rouse testified that Jones told him that one of his step-nephews, who was a minor, had recently told him that he been sexually assaulted by Doyle and had watched Doyle sexually assault his younger brother. Rouse referred to this step-nephew as Victim No. 1 and his younger brother as Victim No. 2. Rouse testified that Jones also told him that Victim No. 1 told him that Doyle had showed him nude photos of young boys. Rouse testified that when he informed Captain Scott of Jones's allegation, he was informed that another minor boy, who Rouse referred to as Victim No. 3, had recently made similar accusations against Doyle.

Rouse testified that, later in August 2003, he interviewed Victim No. 1, and Victim No. 1 stated that Doyle had sodomized him at Doyle's residence on one occasion. Victim No. 1 further stated that he had watched Doyle sodomize his younger brother, Victim No. 2, at Doyle's residence on another occasion. Rouse testified that he also interviewed Victim No. 2 in August 2003, and Victim No. 2 confirmed that he and Victim No. 1 had been taken by Doyle to Doyle's residence on at least one occasion, but he would not say what had occurred. Instead, he told Rouse only that his older brother knew what had happened to him.

Rouse admitted that neither of these boys ever made any statement to him alleging that Doyle had shown them nude pictures of young boys. He further admitted that neither of these boys was able to identify the date on which these alleged sexual

assaults occurred. Rouse stated that Victim No. 1 did say that these events had occurred when the weather was "cool" and while his family had lived in a trailer park. Rouse stated that he had determined that the boys' family had resided in an area trailer park from October to December of 2002, and, therefore, he had made the assumption that the assaults by Doyle had occurred during this time frame.

Rouse stated that he interviewed Victim No. 3 in December 2003, and that Victim No. 3 stated that he, too, had been sodomized by Doyle in an assault similar to the ones described by Victim No. 1. Rouse stated that Victim No. 3 was able to provide a description of the interior of Doyle's residence and bedroom, which Rouse knew to be accurate. Rouse admitted that Victim No. 3 did not make any statement to him regarding Doyle possessing or showing him any nude photographs of young boys. Rouse also admitted that Victim No. 3 was unable to identify the date of the assault, other than to say that it occurred when it was "cold."

Rouse admitted that, insofar as the Affidavit stated that [t]hree minor children ... stated that ... Doyle had sexually assaulted them," it was inaccurate, in that only two of the alleged victims had told him that Doyle had sexually assaulted them. Rouse also admitted that, insofar as the Affidavit stated that "victims describe the assailants [sic] bedroom," it was inaccurate, in that only one victim had described Doyle's bedroom. Rouse further testified on cross-examination that he had inaccurately testified in Lee County General District Court at a preliminary hearing held for Doyle on pending sexual assault charges that all three victims had told him that they had been sodomized. Rouse also admitted that he inaccurately testified at this preliminary hearing by stating that two of the victims had been shown nude pictures of boys by

-6-

Doyle. Rouse admitted that he was the sole witness who appeared before a Lee County Circuit Court grand jury on January 9, 2004, and offered testimony in support of an indictment returned against Doyle charging him with sodomy against these boys with alleged offense dates occurring in October or November 2003 and December 2003, rather than the correct dates of October or November 2002 and December 2002.

Rouse admitted that the Affidavit on its face contained no statements from which Magistrate Burke could assess the reliability of any information provided to Rouse from Jones, the step-uncle of Victim No. 1. Rouse further admitted that he made no statement to Magistrate Burke regarding the reliability or credibility of Jones. Rouse admitted that no description was given to Magistrate Burke of the photographs Doyle allegedly showed to one of the victims, other than that information contained on the face of the Affidavit. Rouse further admitted that no information was given to Magistrate Burke that these "pictures of nude children" were ever in Doyle's residence.

Rouse did testify that he told Magistrate Burke that he had recently completed training in which he had learned that persons who viewed child pornography often collected and retained such material for long periods of time.

### III. Analysis

The Motions assert that the evidence seized by state law enforcement officers in the January 9, 2004, search of Doyle's residence, including the images contained on the computer seized, should be suppressed because the Affidavit did not state

-7-

Case 2:07-cr-00004-JPJ-PMS   Document 87   Filed 09/14/07   Page 7 of 17   Pageid#: 163

probable cause to support the issuance of the search warrant.

The standard this court should use in evaluating Doyle's illegal search and seizure claim is "whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." *United States v. Eastland*, 989 F.2d 760, 766 (5th Cir. 1993) (quoting *United States v. Walker*, 960 F.2d 409, 415 (5th Cir. 1992); *see also United States v. Clyburn,* 24 F.3d 613, 616 (4th Cir. 1994); *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994); *United States v. Mitchell*, 783 F.2d 971, 973-74 (10th Cir. 1986). The Fourth Amendment to the U.S. Constitution states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." U.S. CONST. AMEND. IV. Furthermore, the U.S. Supreme Court has held that the language of the Fourth Amendment is "precise and clear." *Stanford v. Texas,* 379 U.S. 476, 481 (1965). Therefore, to comply with the clear terms of the Fourth Amendment, a warrant must be based upon probable cause established by evidence offered by oath or affirmation.[2]

The Supreme Court has described the "probable cause" required to authorize a search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Supreme Court

---

[2]The Fourth Amendment does not "require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit." *Clyburn*, 24 F.3d at 617 (quoting *United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992). Therefore, as the Fourth Circuit held in *Clyburn*, "magistrates may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings." 24 F.3d at 617. *But see See* VA. CODE ANN. 19.2-54 (2004 Repl. Vol. & Supp. 2007) ("No search warrant shall be issued until there is filed with the officer authorized to issue the same an affidavit.... The term 'affidavit' as used in this section, means statements made under oath or affirmation and preserved verbatim.")

-8-

has adopted a "totality-of-the-circumstances" test to determine whether probable cause supported the issuance of a search warrant. *Gates*, 462 U.S. at 238. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). The Court also has held that"proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States,* 287 U.S. 206, 210 (1932). Thus, "there is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d, 1331, 1335 (4th Cir. 1984). Furthermore, to establish probable cause for a search there must be a sufficient nexus between the criminal conduct, the items to be seized and the place to be searched. *See United States v. Lalor*, 996 F.2d 1578, 1582-83 (4th Cir. 1993). Also, "residential searches have been upheld only where some information links the criminal activity to the defendant's residence." *Lalor*, 996 F.2d at 1583.

Also, probable cause may be established through hearsay information from a reliable informant. *See United States v. Ventresca,* 380 U.S. 102, 108-09 (1965); *Draper v. United States*, 358 U.S. 307, 312-13 (1959). The Supreme Court has noted that two factors are instrumental in determining whether hearsay information provided by an informant amounts to probable cause for a search. Those two factors are the informant's "veracity" or "reliability" and his or her "basis of knowledge." *Gates*, 462 U.S. at 238. The Supreme Court in *Gates* also recognized, however, that "conclusory" statements from reliable informants were not sufficient to establish probable cause. *Gates*, 462 U.S. at 239. "Sufficient information must be presented

-9-

Case 2:07-cr-00004-JPJ-PMS    Document 87    Filed 09/14/07    Page 9 of 17    Pageid#: 165

to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239. The Supreme Court in *Gates* affirmed its holding in *Aguilar v. Texas*, 378 U.S. 108, 114 (1964), that an affidavit must contain some of the underlying facts and circumstances from which the informant concluded that contraband was present in the identified location to be sufficient to establish probable cause. *See* 462 U.S. at 239.

The court begins its analysis as to whether sufficient probable cause existed for the issuance of this warrant by acknowledging that a finding of probable cause is to be given "great deference." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Despite the amount of evidence obtained by the Lee County Sheriff's Department showing that Doyle had committed three sexual assaults of minor boys in his residence, the Affidavit sought to search Doyle's residence in relation to the offense of possession of child pornography. Furthermore, the Affidavit listed the things to be searched for as "materials, books, magazines, pictures, videos that are of a sexual nature involving any minor child."[3] As stated above, the clear language of the Fourth Amendment requires that only sworn evidence may be considered in determining if probable cause exists to issue a warrant. That being the case, the only sworn evidence before Magistrate Burke with regard to whether child pornography was then present in Doyle's residence was contained on the face of the Affidavit. The Affidavit states only: "One victims

---

[3] It is interesting to note that in an ancillary proceeding conducted at the same time as the hearing on the Motions, Chris Hoy, Special Agent with the Secret Service who conducted the forensic examination of the computer seized from Doyle's residence, stated that the examination that he first conducted on the computer's hard drive was a search for evidence related to the three victims of alleged sexual assaults by Doyle, not a search for child pornography.

-10-

disclosed to an Uncle that Doyle had shown the victim pictures of nude children." There is no evidence as to when this occurred. There is no evidence as to where this occurred. Furthermore, there is no evidence that the pictures shown were "child pornography."

Virginia Code §18.2-374.1:1 makes it illegal to "knowingly possess[] child pornography." VA. CODE ANN. § 18.2-374.1:1 (2004 Repl. Vol & 2007 Supp.) For purposes of this section, "child pornography" is defined as "sexually explicit visual material which utilizes or has as a subject an identifiable minor." VA. CODE ANN. § 18.2-374.1(A) (2004 Repl. Vol. & 2007 Supp.) "Sexually explicit visual material" is defined as "a picure, photograph, drawing, sculpture, motion picture film, digital image, ... which depicts sexual bestiality, a lewd exhibition of nudity, ...or sexual excitement, sexual conduct or sadomasochistic abuse ...." VA. CODE ANN. § 18.2-374.1(A). While the Affidavit alleges that Doyle had shown the victim pictures of "nude children," the Affidavit contains no further information as to the content of these pictures. Specifically, there is no allegation that the pictures contained a "lewd exhibition of nudity," which would be required to constitute child pornography under the Virginia statute.

Furthermore, the entirety of the sworn evidence before Magistrate Burke with regard to Doyle's alleged possession of child pornography was provided by an informer – an uncle of one of the alleged assault victims. *See United States v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991) ("An informant's tip is rarely adequate on its own to support a finding of probable cause.). In *United States v. DeQuasie*, 373 F.3d 509, 518-19 (4th Cir. 2004) (quoting *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004))

-11-

(citation and internal quotation omitted), the Fourth Circuit held that, generally, when an effort is made to establish probable cause for the issuance of a search warrant based on hearsay from an informant, "it is necessary to consider all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information. The degree to which an informant's story is corroborated may also be an important factor." Here, the Affidavit contains absolutely no evidence from which Magistrate Burke could assess the veracity or reliability of this informer. Furthermore, from the face of the Affidavit it is clear that the informer – the uncle – did not speak with personal knowledge, but rather was simply conveying the statement of his nephew. *See Aguilar*, 378 U.S. at 113-14, (affidavit did not provide a sufficient basis for a finding of probable cause and the issuance of a search warrant where the affiant's conclusion that narcotics were being kept on the premises was based on information received from an informant and the affidavit did not even contain an affirmative allegation that the informant spoke with personal knowledge).

For all of these reasons, I find that, given the totality of the circumstances, probable cause did not support the issuance of the search warrant for Doyle's residence. However, the court's inquiry does not end here. The Court must next decide whether the good faith exception to the exclusionary rule, set forth in *United States v. Leon*, 468 U.S. 897, 915, 918-20 (1984), applies under the circumstances of this case. In *Leon*, the Court held that the exclusionary rule does not bar admission of evidence gained by officers acting in objectively reasonable reliance on a warrant later determined to be invalid. *See* 468 U.S. at 913. The Supreme Court in *Leon* outlined the following four situations in which an officer's reliance on such a warrant would not be reasonable: 1) when the warrant is based on an affidavit containing knowing or

-12-

reckless falsity; 2) when the magistrate has simply acted as a rubber stamp for the police; 3) when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; and 4) when the warrant is so facially deficient that an officer could not reasonably rely on it. *See Leon*, 468 U.S. at 923.

I first note that there is no allegation here that the warrant was facially deficient. Instead, Doyle's counsel argues that the officer's reliance on the issued warrant was unreasonable because it was based on an affidavit containing knowing or reckless falsity and the magistrate simply acted as a rubber stamp approving a "bare bones" affidavit, which did not provide the magistrate with a substantial basis for determining the existence of probable cause. Based on the facts presented to the court, I agree.

Captain Scott, who executed this search warrant, testified that he was aware that a warrant was valid only if issued based on sworn evidence. Captain Scott knew that the only sworn evidence offered to Magistrate Burke in support of the request for this search warrant was the statement contained in the Affidavit that the uncle of one of the victims said *that the victim said* that Doyle had shown him pictures of nude children. Again, the Affidavit contained no evidence of when or where this had occurred and no evidence from which anyone could determine the uncle's veracity or reliability. Nor did the Affidavit contain any information from which anyone could determine whether the pictures were, in fact, child pornography. Thus, if ever there has been a warrant issued on a "bare bones" affidavit, this is such a case. Also, Captain Scott knew that Magistrate Burke, himself, had expressed concern that the information contained in the Affidavit was stale, and Scott knew that the only information provided in response to that concern was not sworn.

-13-

While the evidence shows that Magistrate Burke asked several questions while considering this Affidavit, that does not prevent the court from finding that, under the facts and circumstances of this case, the magistrate simply acted as a rubber stamp for law enforcement. Again, the evidence shows that Rouse responded to all of Magistrate Burke's questions except the one questioning why Captain Scott was signing the Affidavit. Furthermore, the undisputed evidence is that Magistrate Burke never placed Rouse under oath. This leads the court to one of two conclusions – either Magistrate Burke did not rely on the oral unsworn information provided by Rouse or he did rely on the information and assumed it to be true. If Magistrate Burke did not rely on the oral unsworn information provided by Rouse, his signing this "bare bones" affidavit amounts to nothing more than rubber stamping of a law enforcement request. If Magistrate Burke did rely on the oral unsworn information provided by Rouse, his assumption that the information was true without requiring the officer to be sworn equally demonstrates that he simply rubber stamped a law enforcement request.[4]

Perhaps the most egregious reason, however, for holding that the good faith exception to the exclusionary rule should not apply to this case is that this warrant was based on an affidavit which contained knowing or reckless falsities. Rouse testified that the statement in the Affidavit that three minor children had stated that Doyle had sexually assaulted them was incorrect. In fact, only two of the alleged victims had told Rouse that Doyle had assaulted them. Rouse also admitted that only one victim, instead of all of the victims, had described Doyle's bedroom. The evidence before the court

---

[4] It should be noted that the only additional information concerning allegations of Doyle's possession of child pornography provided in Rouse's oral statements to Magistrate Burke was that persons who possessed child pornography often collected and retained the materials for long periods of time.

-14-

shows that Captain Scott executed the Affidavit under oath knowing that it contained these falsities or with a reckless disregard for whether the Affidavit was truthful. Scott testified that he had conducted no independent investigation of the facts surrounding the allegations against Doyle, rather he had totally relied on the information provided by Rouse. Rouse testified that Scott was present when he told Magistrate Burke that only two of the alleged victims had stated that Doyle had sexually assaulted them and that only one of the victims had described Doyle's bedroom.Therefore, if Scott read the Affidavit before executing it, he knew that it contained these false statements. If Scott did not read the Affidavit before executing it, as he admits is "entirely possible," his execution would show a reckless disregard for whether the Affidavit contained accurate information.

"At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). "The right to privacy in one's home is a most important interest protected by the Fourth Amendment...." *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996). To allow law enforcement officers to use evidence seized in a search of a residence based on nothing more than another's uncorroborated statement that the resident might have been involved in illegal activity on some other unspecified occasion at some unspecified location – whether upon a finding of probable cause or pursuant to application of the good faith exception – would sanction the very evil the Fourth Amendment seeks to protect against. *See Payton v. New York*, 445 U.S. 573, 585 (1980).

For these reasons, I find that the search warrant at issue in this case was not

-15-

supported by sufficient probable cause. I further find that the good faith exception set forth in *Leon* should not apply to prevent the suppression of the evidence seized in this search. Therefore, I will recommend that the court grant the Motions and suppress the evidence seized in the January 9, 2004, search of Doyle's residence.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Probable cause did not exist for the issuance of the state court warrant which served as the basis for the January 9, 2004, search of the defendant's residence; and

2. The good faith exception does not apply to prevent the suppression of the evidence gathered in the January 9, 2004, search of the defendant's residence.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the Motions be granted and that the court suppress all evidence seized in the January 9, 2004, search of the defendant's residence.

-16-

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within ten days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 14th day of September 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE