# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT BIG STONE GAP, VA
FILED

JAN 02 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>Plaintiff, ) | **Criminal No. 2:07cr00004** |
| )<br>)<br>v. )<br>)<br>) | **MEMORANDUM OPINION** |
| ROBERT FRANKLIN DOYLE JR., )<br>Defendant. )<br>)<br>) | By: GLEN M. WILLIAMS<br>SENIOR UNITED STATES DISTRICT JUDGE |

 

This case is before the court on the motions of the defendant, Robert Franklin Doyle Jr., to suppress certain evidence seized in a January 9, 2004, search of his residence, (Docket Item Nos. 47 and 80), ("Motions"). The Motions were referred to United States Magistrate Judge Pamela Meade Sargent pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). The United States Magistrate Judge conducted a hearing on the Motions on September 11 and 12, 2007, and as directed by the order of referral, submitted a report and recommendation to the undersigned, recommending that the Motions be granted. Thereafter, the Government filed objections to the report and recommendation on October 5, 2007, (Docket Item No. 103). The defendant filed a brief in support of the report and recommendation on October 22, 2007, (Docket Item No. 106). For the reasons that follow, the court sustains the Government's objections and denies the defendant's Motions.

*I. Facts*[1]

Doyle was originally charged in a two-count indictment with receipt and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b)(2) and 2255A(a)(5)(B). A five-count superseding indictment was returned September 11, 2007. The superseding indictment contains the two original charges, in addition to three counts of shipping child pornography in interstate commerce in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1). These federal charges arise as a result of evidence seized in a January 9, 2004, search of Doyle's Rose Hill, Virginia, residence by the Lee County Sheriff's Department. This search was incident to a January 8, 2004, warrant issued by Lee County state court Magistrate Jim L. Burke.

The Affidavit For Search Warrant filed with Magistrate Burke was sworn to by Captain Charles Taylor Scott, Lee County Sheriff's Department Chief Investigator, (Docket Item No. 81, Exhibit A), ("Affidavit"). The Affidavit states that a search of the defendant's residence was requested in relation to the offense of possession of child pornography in violation of Virginia Code § 18.2-347.1:1.[2] The Affidavit describes the things to be searched for as follows:

> Any and all materials, books, magazines, pictures, videos that are of a sexual nature involving any minor child. Also any communication system that could be used to facilitate a sexual offense against a child. (computer)

---

[1] Portions of the facts are adopted from the Magistrate's Report and Recommendation.
[2] The offense of possession of child pornography is actually found at Virginia Code § 18.2-374.1:1. This error appears to be nothing more than a typographical mistake.

The Affidavit states that "[t]he material facts constituting probable cause" are as follows:

> Three minor children have come forward and stated that Robert Doyle Jr. has sexually assaulted them at the Doyle residence. One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children.

The Affidavit also states:

> I was advised of the facts set forth in this affidavit in whole or in part, by an informer. This informer's credibility or the reliability of the information may be determined from the following facts:
>
> > Detailed Victim statements of the assault and of the Doyle residence, where victims describe the assailants [sic] bedroom and, vehicle he drives and description of the home. Which has all been verified by Sheriffs Dept.

At the suppression hearing, Captain Scott testified that he and Lieutenant Fred Rouse, another investigator with the Lee County Sheriff's Office, appeared before Magistrate Burke on January 8, 2004, in an effort to obtain the warrant to search Doyle's home. Both Scott and Rouse testified that Rouse performed the majority of the investigation into the allegations that Doyle had sexually assaulted three minor boys, while Scott served as chief investigator and acted mostly in a supervisory role. Rouse testified that he prepared the Affidavit and that Scott, as Rouse's supervisor, chose to sign the Affidavit due to concerns that Rouse was pursuing the investigation of the defendant because of a personal issue. Rouse testified that the Lee County Sherriff's Department wanted to make clear that Rouse was not the only one involved in the case; thus, Scott went to the magistrate with Rouse and signed off on the Affidavit.

Scott, who was recently involved in an ATV accident resulting in a head injury that affected his memory, testified that he could not remember whether he read the Affidavit before he signed it. Scott testified that he could not recall personally conducting interviews with any of the witnesses or victims in the case, although it was possible that he watched Rouse conduct victim interviews, or that he watched the videotape recordings of one of the victim's interviews. Rouse testified that he was certain Captain Scott reviewed all of the evidence before going before the magistrate because that is what Scott's job as chief investigator entails. Rouse also testified that Captain Scott was aware of every step he made in the investigation. Further, Scott testified that Rouse apprised him of the investigation as he was conducting it, and that he reviewed and signed the Affidavit because he was chief investigator and because of "other dynamics of the case." Scott also testified that he had 100% faith in Rouse's investigation and in his integrity as an officer.

Both Scott and Rouse testified that Magistrate Burke raised a number of questions concerning the Affidavit as presented. Rouse testified that the magistrate asked for an overview of the entire case. Rouse also testified that the magistrate asked specific questions. Both men stated that the only question Magistrate Burke asked of Scott was an inquiry as to why he, and not Rouse, had signed the Affidavit. Both men further testified that Rouse, who was never placed under oath by Magistrate Burke, answered the remaining questions. Rouse testified that even though he may not have raised his hand and taken an oath, he was truthful when he went before Magistrate Burke. Rouse also explained that he was usually placed under oath when he was before the magistrate, but that he had never been before a magistrate where he was a "second party to a conversation," and another officer was seeking the search warrant.

Rouse testified that he told Magistrate Burke that in early August 2003, Edward J. Jones came into the Lee County Sheriff's Office and asked to speak with an investigator. Rouse spoke with Jones, who reported that one of his step-nephews, a minor, confessed to him that he had been sodomized by Doyle. The step-nephew, Victim No. 1, also informed Jones that he watched Doyle sodomize his younger brother, Victim No. 2, and that Doyle had shown him (Victim No. 1) photographs of nude boys. After the interview, Rouse informed Captain Scott of what the step uncle reported. When Rouse informed Scott of the report, an investigator by the name of John Woodward was present. Woodward informed Rouse of another child, Victim No. 3, who had recently made similar accusations against Doyle.

Rouse testified that later in August 2003 he interviewed Victim No. 1, who stated that Doyle had sodomized him at Doyle's residence on one occasion. Victim No. 1 further stated that he watched Doyle sodomize his younger brother, Victim No. 2, at Doyle's residence on another occasion. Rouse also testified that he interviewed Victim No. 2 in August 2003, and Victim No. 2 confirmed that he and Victim No. 1 had been taken by Doyle to his residence on at least one occasion, but Victim No. 2 was unwilling to say what occurred. Instead, Victim No. 2 only told Rouse that his older brother knew what happened to him. Rouse testified that neither Victim No. 1 nor Victim No. 2 ever made any statement to him alleging that Doyle had shown them nude photographs of young boys, but that Victim No. 1 confirmed that he spoke with his step uncle regarding the assaults.

Rouse stated that he interviewed Victim No. 3 in December 2003, and that Victim No. 3 stated that he, too, had been sodomized by Doyle in an assault similar to the ones described by Victim No. 1. Rouse stated that Victim No. 3 was able to

provide a description of the interior of Doyle's residence and bedroom, which Rouse was able to corroborate from being present in Doyle's residence on a prior occasion. Rouse testified that Victim No. 3 did not volunteer any statement to him regarding Doyle possessing or showing any nude photographs of young boys.

Rouse testified that a time frame was put together based on when Victim No. 3 was placed into the Department of Children's Services' care, testimony that the weather was cold at the time of the alleged assault, based on where Victim No. 3 was living at the time of his assault and based on where Doyle worked throughout the year. Rouse testified that Doyle's place of employment was important because a dump truck was present at the time of the alleged assault, and Doyle drove a dump truck during certain parts of the year. Rouse also testified that Victim No. 1 stated that his alleged assault took place during a cool time of the year and while he was living at Campbell's trailer park, where he lived during the fall and winter months. Victim No. 1 also informed Rouse that a dump truck was present at Doyle's residence when the alleged assault took place.

Rouse testified that he provided the magistrate details of the videotaped interview with Victim No. 3, in which Victim No. 3 described, in detail, the interior of Doyle's home. Rouse also answered questions regarding whether the information contained in the Affidavit was stale. Rouse informed the magistrate that the investigation was a long process. Further, Rouse testified that he told Magistrate Burke that he had recently completed training through the Virginia Criminal Justice Services, where he learned that persons who viewed child pornography often collected and retained such material for long periods. Rouse also testified that it was common for child pornography collectors to view child

pornography on the internet. Rouse testified that the hearing before Magistrate Burke lasted roughly an hour.

Rouse admitted that, insofar as the Affidavit stated that "[t]hree minor children . . . stated that . . . Doyle had sexually assaulted them," it was inaccurate, in that only two of the alleged victims actually told Rouse that Doyle sexually assaulted them. Rouse testified that Victim No. 2 did not allege an assault had taken place, but only that he was taken to Doyle's residence and that his brother, Victim No. 1, knew what happened to him. Rouse also testified that he mistakenly used the term uncle, instead of step uncle, in the Affidavit. In addition, Rouse testified that the statement, "where victims describe the assailants [sic] bedroom and, vehicle he drives and description of the home," was technically false insofar as only one victim described the bedroom. Rouse testified further, however, that he was a new investigator at the time he typed the Affidavit and was not trying to be reckless or in any way mislead the magistrate when he made the errors. Rouse also admitted he inaccurately testified in the Lee County General District Court at a preliminary hearing held for Doyle on pending sexual assault charges. Rouse stated that he inaccurately told the court that all three children had come forth stating they had been assaulted, the same error in the Affidavit, and that he inaccurately told the court that two of the victims had been shown nude photographs of boys. Rouse testified that these mistakes were the result of "lack of preparedness" prior to attending the hearing.

Scott testified that, as a law enforcement officer, he knew that a magistrate could not rely on unsworn testimony in determining whether probable cause existed to issue a search warrant. When questioned about what type of testimony

the magistrate could consider for probable cause, the following exchange took place between Doyle's counsel and Scott:

> Doyle's Counsel: Anything else that may have been said to this magistrate could not serve as a [basis] for probable cause for the issuance of this search warrant and to search the Doyle residence, correct? You understand that?

> Scott: I understand that the magistrate signed off on the search warrant.

Scott testified that he was the officer who executed the search warrant on Doyle's residence. A copy of the search warrant return was admitted into evidence at the suppression hearing. (Defense Exhibit 1.) The return shows that officers conducted the search of Doyle's residence on January 9, 2004, and seized a computer, miscellaneous computer disks, papers and photographs and a "lock box." The government asserts that a forensic examination of the hard drive of this computer revealed that it contained numerous images which constitute child pornography, which are the basis of the federal charges against Doyle.

## II. Analysis

The Fourth Amendment does not contain a provision that expressly precludes the use of evidence obtained in violation of its commands, and an examination of the Fourth Amendment's origin and purposes makes clear that the use of fruits of a past unlawful search or seizure "'[works] no new Fourth Amendment wrong.'" *See United States v. Leon*, 468 U.S. 897, 906 (1984)

(quoting *United States v. Calandra*, 414 U.S. 338, 354 (1974)). Because the wrong condemned by the Fourth Amendment is fully accomplished by the unlawful search or seizure itself, the exclusion of evidence obtained in violation of a defendant's Fourth Amendment rights is a remedy that is neither intended nor able to cure the invasion of the defendant's rights which he has already suffered. *See Leon*, 468 U.S. at 906 (internal citations and quotations omitted). The remedy of excluding evidence obtained in violation of a defendant's Fourth Amendment rights through the use of the judicially created exclusionary rule, is therefore, a "'remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *See Leon*, 468 U.S. at 906 (quoting *Calandra*, 414 U.S. at 348).

In *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court established a good-faith exception to the exclusionary rule, concluding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Furthermore, the Court noted that "[searches] pursuant to a warrant will rarely require any deep inquiry into reasonableness," because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has "acted in good faith in conducting the search." *Leon*, 468 U.S. at 922-23 (quoting *Illinois v. Gates*, 462 U.S. 213, 267 (1983) (White, J., concurring in judgment); *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982)) (internal quotations omitted).

Nevertheless, the *Leon* Court instructed that an "officer's reliance on [a] magistrate's probable-cause determination and on the technical sufficiency of the warrant . . . must be objectively reasonable." 468 U.S. at 922-23 (citing *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 815-19 (1982)).    The Court then identified four circumstances in which an officer executing or obtaining a warrant would have no reasonable grounds for believing that the warrant was properly issued and in which the good-faith exception would not apply:    (1) "if the magistrate . . . issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;" (2) if the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979);[3] (3) if the affidavit supporting the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable;" and (4) if, under the circumstances of the case, the warrant is so facially deficient that the executing officer(s) would not reasonably presume it to be valid. *Leon*, 468 U.S. at 922-23.

Moreover, the *Leon* Court noted that, in some circumstances, a court could reject a suppression motion by turning immediately to a consideration of the officers' good faith. 468 U.S. at 925; *see also United States v. Clutchette*, 24 F.3d 577, 581 n.4 (4th Cir. 1994) (noting that reviewing courts have the discretion to consider the question of the officers' good faith without deciding the Fourth Amendment issue) (citations omitted).    In this case, the court will exercise its

---

[3] In *Lo-Ji Sales*, a judge accompanied law enforcement officers to an adult bookstore, inspected materials inside the bookstore, determined whether each inspected item was obscene and authorized seizure of items deemed obscene. The Supreme Court invalidated the search, finding that the judge did not manifest the neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure because he allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. *See United States v. DeQuasie*, 373 F.3d 509, 520 n.14 (4th Cir. 2004) (summarizing the evil committed in *Lo-Ji Sales*) (citing *Lo-Ji Sales*, 442 U.S. at 326-27).

judicial discretion and proceed directly to consideration of the *Leon* good-faith exception.

Under *Leon*, the proper test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922. The test of an officer's good faith is an objective test, which requires a determination of the knowledge of a reasonable officer, not an examination of an officer's subjective motives. *See Clutchette*, 24 F.3d at 582. This test determines, therefore, when looking at the totality of the circumstances, whether an officer exercised the reasonable professional judgment required in order to avoid unnecessary danger of an unlawful arrest. *See Malley v. Briggs*, 475 U.S. 335, 345-46 (1986); *United States v. Legg*, 18 F.3d 240, 244 (4th Cir. 1994). Based on this objective test, this court will discuss, in turn, the four circumstances outlined in *Leon*, in which the good-faith exception does not apply.

The first circumstance noted in *Leon* does not apply in this case. The magistrate was not misled by material information that the affiant knew was false or would have known was false except for a reckless disregard for the truth. The errors in the Affidavit are in part due to poor sentence construction and are minor when viewed in light of the totality of the circumstances. To prove reckless disregard for the truth, the defendant must prove that the affiant "in fact entertained serious doubts as to the truth" of the allegations. *United States v. Gary*, 420 F. Supp. 2d 470, 480 (E.D. Va. 2006) (citing *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)). In this case, Scott testified that he was kept apprised of the investigation as it progressed, and that he had 100% faith in Rouse's investigation and in his integrity as an officer. While Scott may have erred in signing an

11

affidavit with some error, his actions do not constitute a reckless disregard for the truth. Doyle alleges that Scott displayed a reckless disregard for the truth because the Affidavit contained false information in that only two minor children actually alleged that they were sexually assaulted, while the Affidavit states that:

> Three minor children have come forward and stated that Robert Doyle Jr. has sexually assaulted them at the Doyle residence. One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children.

Doyle also challenges the truth of the second sentence above, noting that the victim described the incident to a step uncle, not an uncle. Both of these errors are minor in nature and do not reach the level of recklessness required by *Leon*. Rather, the factual inaccuracies challenged by Doyle are only of peripheral relevancy to the showing of probable cause and do not go to the integrity of the Affidavit. *See Rugendorf v. United States*, 376 U.S. 528, 531-32 (1964). While the facts of the case indicate that only two children actually came forward and stated that Doyle assaulted them, they also indicate that three children were assaulted, and that Victim No. 2 was unwilling to describe what happened, perhaps because of the graphic nature of the act. However, Victim No. 2 did tell police that his brother knew what happened, and his brother confirmed that Victim No. 2 was sodomized. Further, the evidence shows that the magistrate was aware of these details. The supporting affidavit must be read in a commonsense, rather than a hypertechnical manner. *Gates*, 462 U.S. at 236.

Moreover, Doyle's allegations that paragraph seven of the Affidavit shows a reckless disregard for the truth is without merit. While Scott signed the Affidavit stating that he received part of his information from an informer, yet he did not directly receive any part of his information from an informer, the fact of the matter

is that the magistrate was fully aware of Scott's involvement in the case. Scott had no reason to believe he should have done any more than be honest with Magistrate Burke. The officers in this case took every step that could reasonably be expected of them, and they did not deliberately mislead the magistrate. *See Mass. v. Sheppard*, 468 U.S. 981, 990-91 (1984). Rouse investigated the case fully, under the guidance of Scott. Rouse then took Scott with him to obtain the search warrant, hiding nothing from the magistrate regarding their roles in the investigation. The Affidavit was presented to a neutral judge who was well aware that Rouse had conducted most of the investigation. The magistrate was also well aware of the circumstances which led to Scott signing off on the Affidavit.

An argument based on the premise that Scott had a duty to disregard the magistrate's decision, after fully informing the magistrate of the details of the case, would lead to the conclusion that reasonable officers must themselves step into the role of a magistrate and determine whether there is a substantial basis for probable cause. A reasonable officer, however, must only determine whether the warrant is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Leon*, 468 U.S. at 922-23. If an officer is required to accept at face value the magistrate's conclusion that an affidavit form is invalid, there is little reason why he should be expected to disregard assurances that everything is all right, especially when he has alerted the judge to the potential problems. *See Sheppard*, 468 U.S. at 990-91. It is the duty of the magistrate to interpret the law, so that if a warrant is invalid, the error is attributable to the issuing authority, not to law enforcement officials, unless reliance on the warrant was unreasonable. *See United States v. Maggitt*, 778 F.2d 1029, 1036 (5th Cir. 1985) (citing *United States v. Thomas*, 757 F.2d 1359, 1368 (2d Cir. 1985); *United States v. Fama*, 758 F.2d

834, 838 (2d Cir. 1985); *United States v. Thornton*, 241 App. D.C. 46, 746 F.2d 39, 49 (D.C. Cir. 1984)).

In the context of errors in a warrant affidavit, the Supreme Court has been reluctant to extend the rule of exclusion beyond instances of deliberate misstatements and those of reckless disregard. *See Franks v. Delaware*, 438 U.S. 154, 170 (1978). In the case at hand, the police were merely negligent in recording the facts relevant to a probable cause determination. *See Franks*, 438 U.S. at 170. As the Supreme Court stated in *Franks v. Delaware*, 438 U.S. 154, 165 (1978):

> When the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing. This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

438 U.S. at 165-66 (internal citations and quotations omitted). Given the totality of the circumstances, these errors and omissions do not amount to a showing that Scott misled the magistrate or recklessly disregarded the truth.

The second circumstance noted in *Leon* also does not apply in this case. *Leon* instructed that the good-faith exception would not apply if the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979). 468 U.S. at 922-23. This case is markedly different from *Lo-Ji Sales*, as Magistrate Burke did not become a member of the investigation and did not accompany the officers to Doyle's residence to preview the items to be seized before including them in the search

warrant. In this case, the magistrate kept himself neutral and detached from the ongoing police investigation and did not act as a rubber stamp. The evidence indicates that Magistrate Burke discussed the warrant Affidavit with Scott and Rouse for roughly an hour, asked specific questions regarding the investigation and inquired as to why Scott was signing off on the Affidavit.

In a similar vein, the United States Court of Appeals for the Fourth Circuit has determined that the good-faith exception to the exclusionary rule does not apply when a magistrate "rubber stamps" a "bare bones" affidavit. *See United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996). The Fourth Circuit adopted the definition of a "bare bones" affidavit from *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993), where the United States Court of Appeals for the Fifth Circuit noted that a "bare bones affidavit" is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *See Wilhelm*, 80 F.3d at 121. In *Illinois v. Gates*, 462 U.S. 213, 239 (1983), the Supreme Court noted that wholly conclusory statements do not provide the magistrate with a substantial basis for determining the existence of probable cause. Rather, sufficient information must be presented to the magistrate to allow him to determine probable cause and his action cannot be a mere ratification of the bare conclusion of others.[4] *Gates*, 462 U.S. at 239.

---

[4] In *Gates*, the Court provided two examples of cases in which it had been presented with "bare bones" affidavits. 462 U.S. at 239. Neither is applicable here. *See Nathanson v. United States*, 290 U.S. 41, 46 (1933) (rejecting warrant based on "a mere affirmation of suspicion and belief without any statement of adequate supporting facts"); *see generally Aguilar v. Texas*, 378 U.S. 108 (1964) (comparing warrant to *Nathanson* and noting that magistrate necessarily accepted without question the informant's suspicion, belief or mere conclusion) (overruled on other grounds).

In the context of the good-faith exception, whether an affidavit is a "rubber stamped bare bones affidavit" must be determined by looking to the standard used in the third circumstance noted in *Leon*: whether the Affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (distinguishing the "substantial basis" threshold from the determination of whether an affidavit lacks in indicia of probable cause). The Court must consider a "rubber stamped bare bones affidavit" in this context, because "[i]f a lack of substantial basis also prevented application of the *Leon* objective good-faith exception, the exception would be devoid of substance." *Bynum*, 293 F.3d at 195. In this case, there was enough evidence present in the Affidavit to allow a reasonable officer to conclude that the magistrate was presented with sufficient information to determine the probable cause requirement under the good-faith exception. In other words, the magistrate's action was not a mere ratification of the bare conclusions of others and, as discussed more thoroughly below, the Affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

The question of whether the magistrate had a substantial basis for determining probable cause need not be answered when deciding whether the officers executing or obtaining the warrant possessed a reasonable, good-faith belief that the search warrant was valid. Scott's application for a warrant was supported by more than a "bare bones" affidavit. The Affidavit related the results of an extensive investigation. Further, the step uncle's information regarding photographs of nude children could be deemed reliable by the officer's corroboration of the step uncle's depiction of the alleged assaults, as noted in the Affidavit. While the alleged victims were never asked about the child

pornography, it was reasonable for the officers to believe that the corroboration of the assaults by interviewing the children and by knowledge of the inside of Doyle's residence would provide sufficient evidence to indicate that the informant's testimony was credible. The information from the step uncle was corroborated by the children as well as by independent investigation into matters surrounding the allegations of sexual assault. *See United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993) (noting that information can be corroborated by other informants and by independent police investigation). The corroboration of related behavior, even innocent behavior, frequently provides the basis for a showing of probable cause. *See Lalor*, 996 F.2d at 1581. "An informant [who] is right about some things . . . [is] more probably right about other facts." *Gates*, 462 U.S. at 244 (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (White, J., concurring)). In this case, the confirmation of the details surrounding the assaults and the interior of Doyle's residence, all mentioned in the Affidavit, give credence to the allegations that Doyle possessed child pornography.

Additionally, the warrant at issue here was supported by an affidavit that depended on information from a named informant who met face-to-face with police. *See United States v. DeQuasie*, 373 F.3d 509, 523 (4th Cir. 2004) The Fourth Circuit has distinguished a named informant from an unnamed informant because an informant who meets face-to-face with an officer provides the officer with an opportunity to assess his credibility and demeanor and also exposes himself to accountability for making a false statement. *See DeQuasie*, 373 F.3d at 523. Generally, "courts have had no difficulty distinguishing between cases involving face-to-face encounters with informants and cases involving anonymous tipsters." *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000).

Even assuming the Affidavit in this case failed to set forth an adequate basis upon which to determine the reliability and credibility of the informant's information or, as Doyle has argued, included stale information, those possible defects are cut "out of the same juridical cloth as that in *Leon*." *See United States v. Merida*, 765 F.2d 1205, 1214 (5th Cir. 1985). Indeed, in *Leon* the Court held that an affidavit met the good-faith exception through analysis of the totality of the circumstances even though it was "fatally stale" and "failed to establish the informant's reliability." *Leon*, 468 U.S. at 904. Whatever the flaws in the Affidavit might be, it cannot be said that it is a "bare bones" list of wholly conclusory statements or that it was devoid of factual support. *See Merida*, 765 F.2d at 1214. As noted previously, it was objectively reasonable for the officers to believe that whatever flaws may have existed in the warrant were cured by the magistrate's questions and their answers at the warrant application proceeding. *See United States v. Edwards*, 798 F.2d 686, 691 (4th Cir. 1986) (citing *Merida*, 765 F.2d at 1214). The investigating officers appeared before a magistrate who carefully examined them about the portions of the Affidavit that he considered to be lacking, and the magistrate was satisfied with the officers' responses to his questions. *See Edwards*, 798 F.2d at 691 (citing *Merida*, 765 F.2d at 1214).

The Supreme Court does not require any specific method of police corroboration and in adopting the "totality of the circumstances" test, the Court specifically abandoned any rigid formulations, in favor of a flexible approach. *See Lalor*, 996 F.2d at 1581 n.5 (citing *United States v. Miller*, 925 F.2d 695, 699 (4th Cir. 1991)). "An investigation need not be perfect." *Miller v. Prince George's County*, 475 F.3d 621, 630-31 (4th Cir. 2007). While Doyle alleges there was no evidence to indicate where the photographs were kept or the nature of the photographs (other than being of nude children), the determination that

Case 2:07-cr-00004-JPJ-PMS   Document 107   Filed 01/02/08   Page 18 of 24   Pageid#: 443

pornographic photographs were kept at his residence can be inferred from the surrounding circumstances. As the Fourth Circuit has instructed, the magistrate's decision is to be accorded great deference, and a warrant should not be invalidated by interpreting an affidavit in a hypertechnical, rather than a commonsense, manner. *See Lalor*, 996 F.2d at 1581 (citations omitted). The magistrate could reasonably infer from the nature of the items to be seized and the location of the alleged assaults that such items would be kept at Doyle's residence. *See United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988) (instructing that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence).

Moving to the third circumstance, and as noted above, there is sufficient evidence for the court to conclude that the Affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 922-23. "Moreover, even assuming that the [A]ffidavit itself lacked sufficient indicia of probable cause to support reasonable reliance on the warrant, the [A]ffidavit did not contain all of the facts presented to the magistrate." *Legg*, 18 F.3d at 244. It is proper to consider any contemporaneous oral statements to the magistrate in conjunction with the supporting affidavit in assessing the reasonableness of an officer's reliance on a warrant. *See Legg*, 18 F.3d at 244 (citing *Edwards*, 798 F.2d at 691-92). The "court should examine the totality of the information presented to the magistrate." *United States v. Perez*, 393 F.3d 457, 462 (4th Cir. 2004) (quoting *Legg*, 18 F.3d at 244 n. 1).

The statements by Rouse, considered in conjunction with Scott's Affidavit, suffice to establish objectively reasonable reliance on the warrant. *See Legg*, 18

F.3d at 244. Therefore, because Scott possessed an objectively reasonable belief that the warrant was valid, he was lawfully present in Doyle's residence during the execution of the warrant. *See Legg*, 18 F.3d at 244. As the Fourth Circuit stated in *United States v. Legg*, 18 F.3d 240, 244 (4th Cir. 1994):

> Thus, [the defendant] maintains that, because [the officer's] supporting affidavit failed to set forth sufficient indicia of probable cause, this court is prohibited from considering . . . good-faith reliance on the warrant, regardless of whether the affidavit, when considered in conjunction with [the officer's] oral statements to the magistrate, suffices to establish objectively reasonable reliance on the warrant. We disagree.
>
> . . .
>
> Because the good-faith analysis focuses on the reasonableness of the officer's reliance on the warrant, we do not believe that the presence or absence of a single factor should automatically preclude the application of the good-faith exception. Rather than focusing on a single step in the warrant application process, the court should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable.

The Affidavit contains factual allegations sufficient for an objectively reasonable officer to conclude that indicia of probable cause are present. In addition, the statements offered by Rouse regarding his training on child pornography collectors offer even more indicia of probable cause, and these statements should be considered in the context of a good-faith analysis. *See United States v. Frazier*, 423 F.3d 526, 538 (6th Cir. 2005) (finding that the magistrate did not abandon his judicial role by relying on unsworn testimony); *see also United States v. $ 149,442.43 in United States Currency*, 965 F.2d 868, 874 (10th Cir.

1992) (noting that "[c]ourts often rely on the opinion of police officers as to where contraband may be kept") (citations omitted).

The court is of the opinion that unsworn testimony may be considered in the context of a *Leon* good-faith analysis as part of the totality of the circumstances and especially in a case where there is no showing of bad faith on the part of the police officers obtaining or executing the warrant. While the Fourth Amendment requires probable cause, supported by Oath or affirmation, the judicially created exclusionary rule steps outside the bounds of the Fourth Amendment requirements and only seeks to deter illegal searches and seizures by deterring police misconduct. In a situation where police misconduct exists, the exclusionary rule applies. However, if the exclusionary rule does not result in appreciable deterrence, then, clearly, its use is unwarranted. *See United States v. Janis*, 428 U.S. 433, 454 (1976). Because the rule is prudential rather than constitutionally mandated, it is only applicable, therefore, where its deterrence benefits outweigh its substantial social costs. *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362-63 (1998) (citing *Leon*, 468 U.S. at 907) (internal citations omitted).

Based on the facts before the court, this case does not present a situation where the use of the exclusionary rule would help to deter police misconduct. While it may be the case that the magistrate was only entitled to consider sworn testimony, the police officer's in this case, nevertheless, had a good faith belief that the warrant was authorized and that their honest testimony was sufficient. Scott executed the warrant after being present at the warrant hearing and with knowledge of what was included in the Affidavit. Obviously, there will be a case where unsworn testimony should not be considered, even in the context of *Leon*, but the court is of the opinion that such a case will present itself with evidence sufficient to

show bad faith on part of the officer, not in a situation where it is evident that failure to swear in a witness was the oversight of the magistrate, and no bad faith exists. In this case, there is no evidence to indicate bad faith and the court is of the opinion that unsworn testimony may be considered as part of the totality of the circumstances.[5] As *Leon* stated:

> [O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances – including whether the warrant application had previously been rejected by a different magistrate – may be considered.

468 U.S. at 923 n.23. Therefore, this court will consider all of the circumstances surrounding the issuance of the warrant. *See Frazier*, 423 F.3d at 536 (holding that a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate); *see also United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) (finding that a reviewing court can look beyond the four corners of the affidavit and search warrant to determine whether the executing officer reasonably relied upon the warrant); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001); (noting that a court must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge) (quotations omitted); *United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996) (looking beyond the affidavit in assessing whether an officer possessed actual bad faith); *United States v. Dickerson*, 975 F.2d 1245, 1250 (7th Cir. 1992) (noting that information known to the executing officers outside of the affidavit could be used to show good faith). To what extent a court can use

---

[5] In determining whether an affidavit is "bare bones," however, contemporaneous oral statements are of no concern.

unsworn testimony to show that there was a substantial basis for probable cause is an issue this court need not decide today.[6] The court is of the opinion, however, that a reasonable officer could conclude, based solely on the facts presented in the Affidavit, that there was indicia of probable cause so as not to render official belief in its existence entirely unreasonable.

Finally, the court must determine whether the warrant was so facially deficient that the executing officers would not reasonably presume it to be valid. As noted in the report and recommendation, this is not challenged,[7] and the court is of the opinion that there is no valid challenge on this ground.

### III. Conclusion

A reasonably well trained officer would have held an objectively reasonable belief that there was probable cause based on the facts of this case. The exclusionary rule is designed to deter police misconduct, and exclusion is only appropriate in cases in which police have acted dishonorably or objectively unreasonable. While the facts of this case might show that the officers erred in

---

[6] While the court believes it can use this testimony in the context of *Leon*, the court would have to exclude this information in a substantial basis probable cause determination, unless extenuating circumstances were present. *See United States v. Servance*, 394 F.3d 222, 231 (4th Cir. 2005) (stating that a "reviewing court is entitled to consider only the information presented *under oath* to the judicial officer who issued the search warrant") (vacated on other grounds) (emphasis added).

[7] The defendant attempts to challenge the warrant on this ground after the Report and Recommendation was entered by making an argument in his Brief in Support of Magistrate Judge's Report and Recommendation. The defendant argues that the term "computer" does not include defendant's hard drive. His argument is without merit. *See United States v. Shilling*, 826 F.2d 1365, 1369 (4th Cir. 1987) (noting that "the specificity required for a warrant varies with the circumstances within a "'practical margin of flexibility'") (quoting *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979)).

their duties, or were even negligent in their duties, they do not establish a reckless disregard for the truth. Furthermore, the magistrate acted in a neutral and detached manner, and sufficient evidence was presented for the officers to conclude that the warrant was not so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

The marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on this search warrant cannot justify the substantial costs of exclusion in this case. *See Prince George's County*, 475 F.3d at 630-31. Application of the extreme sanction of exclusion is inappropriate when the court takes the totality of the circumstances into account.

The court, therefore, rejects the United States Magistrate Judge's Report and Recommendation and denies the defendant's Motions. An appropriate order will be entered.

ENTER: January 2 2008

THE HONORABLE GLEN M. WILLIAMS
SENIOR UNITED STATES DISTRICT JUDGE