# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 2:07CR00004 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **ROBERT FRANKLIN DOYLE, JR.**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, and Samuel E. Fishel, IV, Special Assistant United States Attorney, Richmond, Virginia, for United States; John E. Jessee, Jessee & Read, P.C., Abingdon, Virginia, for Defendant.*

In this criminal case, the defendant, convicted by a jury of possessing child pornography, has filed post-trial motions seeking acquittal and a new trial. For the reasons that follow, I will deny the motions.

I

The defendant Robert Doyle was convicted by a jury of knowingly receiving and knowingly possessing child pornography in violation of 18 U.S.C.A. §§ 2252A(a)(2)(A), (a)(5)(B), and (b)(2) (West Supp. 2008) (Counts One and Two), and knowingly transporting child pornography in violation of 18 U.S.C.A. §§ 2252A(a)(1) and (b)(1) (West Supp. 2008) (Counts Three, Four, and Five). At

trial, the government contended that the defendant had used a desktop computer located in his bedroom to download images of child pornography from the internet. The defendant argued that since other people had had access to the computer, the government did not prove beyond a reasonable doubt that the defendant was the person who had downloaded the images. The defendant also asserted that the government did not meet its burden of proving that the images depicted real children under the age of eighteen.

In his post-trial Motion for a Judgment of Acquittal, the defendant raises these arguments once more, contending that the government presented insufficient evidence for the jury to find beyond a reasonable doubt that the defendant was the person who downloaded the images and that the images depicted real children under the age of eighteen. The defendant also argues that the government did not establish that the Western District of Virginia was the proper venue for the three counts of transporting child pornography.

In his Motion for New Trial, the defendant argues that the testimony of a deceased witness given previously at a bond hearing should not have been admitted at trial under Federal Rule of Evidence 804(b)(1) and the Sixth Amendment's Confrontation Clause because the defendant did not have a similar motive to cross-

Case 2:07-cr-00004-JPJ-PMS   Document 324-1   Filed 06/02/09   Page 2 of 17   Pageid#: 1139

examine the witness during the bond hearing. The defendant's motions have been briefed and argued and are ripe for decision.

II

The evidence adduced at trial was sufficient for a reasonable jury to convict the defendant beyond a reasonable doubt, and the government presented sufficient evidence that the Western District of Virginia was the proper venue for all counts. Therefore, I will deny the defendant's Motion for a Judgment of Acquittal.

The defendant argues that the government submitted insufficient evidence for a jury to convict him of the crimes charged. Specifically, the defendant claims that there was insufficient evidence that the defendant was the person who downloaded the images of child pornography and that the images depicted real children under the age of eighteen. A conviction must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942), *superseded by statute on other grounds as recognized in Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987). I must determine "whether *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995) (internal quotation marks and alternations omitted).

The government presented sufficient evidence that the defendant was the person who downloaded the images of child pornography. Other individuals did testify to having used the computer on which the images were found. However, the twenty-six offensive images admitted into evidence were all created and accessed exclusively between 6:21 p.m. and 1:53 a.m., and twenty-four of those images were only accessed after 9:18 p.m.[1] The three emails sent from "bobby" <rfdj1@hotmail.com> to <bobbydva@yahoo.com>[2] or <rfdj1@hotmail.com> with images of child pornography attached were time marked 9:02 p.m., 9:40 p.m., and 9:41 p.m.[3] The computer was located in the defendant's bedroom, evidence that he was the most likely person to have had access to the computer late at night. A jury verdict may be based in whole or in part on circumstantial evidence, *Holland v. United States*, 348 U.S. 121, 140 (1954), and this evidence was sufficient for the jury to conclude the defendant was the person accessing and transporting the images.

---

[1] The images admitted into evidence included time stamps for when they were created, modified, last written, and last accessed. Testimony at trial showed that the computer on which the images were found was set to Central Standard Time, which was reflected in the time stamps. The times listed here have been converted into Eastern Standard Time.

[2] Evidence at trial showed that the email address bobbydva@yahoo.com was registered to Mr. Bobby Doyle. (Gov't Ex. 15.) The Yahoo! account for bobbydva@yahoo.com listed rfdj1@hotmail.com as an alternate email address. (*Id.*) The government argued that the defendant emailed the images to himself for safekeeping.

[3] The time stamps on the email messages reflected the correct hour in Eastern Standard Time.

The government introduced the pornographic images as the only evidence that those images depicted real children under the age of eighteen, but such evidence was sufficient. Under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 251-56 (2002), pornographic images of "virtual" children are protected free speech. The government therefore had the burden to prove beyond a reasonable doubt that the images in this case depicted real children. Although the Fourth Circuit has yet to rule upon the issue, other circuits have concluded that images themselves may be sufficient evidence for a jury to conclude that real children are depicted. *United States v. Salcido*, 506 F.3d 729, 733-34 (9th Cir. 2007); *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 437 (1st Cir. 2007); *United States v. Irving*, 452 F.3d 110, 121-22 (2d Cir. 2006); *United States v. Farrelly*, 389 F.3d 649, 654 & n.4 (6th Cir. 2004), *abrogated on other grounds by United States v. Williams*, 411 F.3d 675, 678 n.1 (6th Cir. 2005); *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003). The jury is capable of distinguishing for itself whether a child depicted in an image is real or virtual. *Salcido*, 506 F.3d at 733-34. Based on my review of the images in this case, I find that these images alone were sufficient

evidence for the jury to conclude that the images depicted real children under the age of eighteen.[4]

The government also presented sufficient evidence that all of the offenses, including the three counts of transporting child pornography, occurred in the Western District of Virginia. Evidence at trial showed that the defendant resided in a house in Rose Hill, Virginia, which is in this district, from August 2003 to January 2004. The defendant's niece testified that she had visited the defendant's residence at least twice per week from August to December 2003, and that there had been a black Dell computer located in the defendant's bedroom during that time period. This testimony was corroborated by Fred Rouse, an investigator for the Lee County Sheriff's Department. He testified that officers had seized a black Dell computer from the defendant's bedroom on January 9, 2004, during the execution of a search warrant at the defendant's residence. It was on this computer, identified by Investigator Rouse during his testimony at trial, that the offending images were found. Special Agent Chris Hoy, who forensically examined the black Dell computer, testified that the operating system had been registered to "Bobby Doyle" in May 2003.

---

[4] The jury in this case was instructed, "It is not necessary that the Government introduce direct evidence of the age of the persons depicted and the jury may consider all of the evidence in the case, including the visual depictions themselves, in determining whether the persons depicted were minors." (Jury Instruction No. 11.)

-6-

Case 2:07-cr-00004-JPJ-PMS   Document 324-1   Filed 06/02/09   Page 6 of 17   Pageid#: 1143

I find that when viewed in the light most favorable to the government, there was sufficient evidence from which the jury could conclude that images of child pornography were transported, received, and possessed by the defendant on the black Dell computer in his residence in this judicial district during the time period in question. Thus, the defendant's Motion for a Judgment of Acquittal will be denied.

III

I will also deny the defendant's Motion for New Trial because the testimony of the unavailable witness was properly admitted at trial. The defendant argues that a new trial should be granted because the admission of prior testimony of a deceased witness violated Federal Rule of Evidence 804(b)(1) and the defendant's Sixth Amendment right to confront witnesses against him. This court has the discretion to grant a new trial where the interests of justice so require. Fed. R. Crim. P. 33(a); *United States v. Mitchell*, 602 F.2d 636, 639 (4th Cir. 1979).

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Prior testimony may therefore only be admitted if the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Federal Rule of

Evidence 804(b)(1) permits the admission of prior testimony of an unavailable witness only where the "party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." "'[S]imilar motive' does not mean 'identical motive.'" *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring). "[T]he similar-motive inquiry . . . is inherently a *factual* inquiry, depending in part on the similarity of the underlying issues and on the context of the . . . questioning." *Id.*

Silas Glass testified at the defendant's bond hearing before a magistrate judge of this court on March 9, 2007. The issues at the hearing included whether the defendant posed a danger to the community and whether conditions of release might reasonably assure his appearance at trial. One factor the court was required to consider was the weight of the evidence against the defendant. 18 U.S.C.A. § 3142(g)(2) (West 2000 & Supp. 2005). Doyle's attorney called Glass to discuss the defendant's work history with a road construction and highway maintenance company, Glass Machinery Excavation. Glass testified that the defendant had been hired initially in 1991 as a truck driver and a part-time mechanic. Over the previous three or five years, however, the defendant had been employed primarily to look after Glass and his wife, who both had physical ailments. The defendant drove Glass to pick up parts for the business. He took Glass or his wife grocery shopping every

Case 2:07-cr-00004-JPJ-PMS   Document 324-1   Filed 06/02/09   Page 8 of 17   Pageid#: 1145

Friday, and occasionally drove Glass to doctors' appointments. He sometimes came by Glass's home in the evening to see if Glass needed anything. The defendant also assisted with whatever needed to be done at the company, such as driving trucks, performing mechanical work, and running errands.

During cross-examination by the government, Glass revealed that although the defendant had generally worked at the store from 8:00 a.m. to 5:00 p.m. five days per week, he would leave during the day to run errands as needed. Glass estimated that the defendant had spent ten to fifteen hours per week running personal errands for Glass and his wife.

Unfortunately, Glass passed away prior to the commencement of the defendant's trial and was therefore unavailable to testify. During the trial, the defendant called Glass's son and daughter-in-law to testify in support of his alibi defense. Responding to some discrepancies between their testimony and Glass's prior testimony, the government cross-examined both witnesses with portions of Glass's testimony regarding the defendant's work history and duties. During its rebuttal case, I also permitted the government to read portions of Glass's testimony to the jury over the defendant's objection.

The defendant argues that the testimony of Glass was inadmissible because the defendant did not have a similar motive to examine Glass on direct and redirect

during the bond hearing as he would have had during cross-examination at trial. I find that the defendant's motive for direct examination and redirect examination at the bond hearing, although not identical, was substantially similar to what his motivation would have been during cross-examination at trial. Thus, the testimony of Glass was properly admitted.

The main issue at the bond hearing was the safety of the community if the defendant were released pending trial. *See United States v. Doyle*, No. 2:07CR00004, 2007 WL 1097844, at *1 (W.D. Va. Apr. 11, 2007) (upholding the magistrate judge's detention order because no condition of release would ensure the safety of the community). On direct examination, Glass's testimony showed that the defendant was working and was accounted for during most weekdays. The government's cross-examination of Glass revealed that the defendant was, in fact, not accounted for during large portions of the day. The clear implication was that during those hours, the defendant could engage in criminal behavior, such as receiving and transporting child pornography. The defendant had a fair opportunity to examine Glass on direct and redirect, if desired. If the defendant could have been accounted for during all hours of the day and night while employed by Glass Machinery, it would have been to the defendant's advantage to bring forth that testimony from Glass during the bond hearing. If Glass's testimony about the defendant's general working hours and duties

was false or the result of misrecollection or confusion, the defendant had a full and fair opportunity to examine Glass to bring the matter to the court's attention.

If Glass had been available to testify at trial, the defendant presumably would have liked to cross-examine him regarding the number of hours the defendant worked each day in Glass's presence, the amount of time the defendant spent running errands each week, and to what extent the defendant worked in the evenings. However, the defendant had a motive and opportunity to question Glass on these issues during direct and redirect examination at the bond hearing. At the bond hearing, the defendant's daily whereabouts made it more or less probable that he would be a danger to the community during pre-trial release and was probative as to whether he was able to commit the crimes charged and whether he would have the opportunity to commit additional crimes upon release. At trial, the defendant's daily whereabouts made it more or less probable that he had a consistent alibi. Although the underlying issues at the bond hearing and at trial were not identical, they were sufficiently similar so that the defendant had an adequate opportunity to confront and examine the witness.

Federal courts have admitted prior testimony from preliminary hearings, even though such hearings are intended merely to show probable cause, not proof of guilt beyond a reasonable doubt. *Glenn v. Dallman*, 635 F.2d 1183, 1187 (6th Cir. 1980)

("The fact remains that while petitioner's counsel did not exercise her opportunity to fully cross examine the witness, she still had that opportunity."); *United States ex rel. Haywood v. Wolff*, 658 F.2d 455, 461 (7th Cir. 1981) (noting that the opportunity for cross-examination afforded at the preliminary hearing need not be identical to that required at trial) *contra People v. Fry*, 92 P.3d 970, 980 (Colo. 2004) (concluding that admission of prior testimony elicited during a state court preliminary hearing violated the defendant's Sixth Amendment right to confront witnesses against him).

Courts have also admitted prior testimony elicited during other types of hearings, such as a bond hearing, *State v. Douglas*, 800 P.2d 288, 293 (Or. 1990) (finding that the defendant had a similar motive to cross-examine the unavailable witnesses during a prior security release hearing), a sanity hearing, *McMurrey v. State*, 168 S.W.2d 858, 861 (Tex. Crim. App. 1943), a committal hearing, *Barnes v. State*, 349 S.E.2d 387, 388 (Ga. 1986), a suppression hearing, *United States v. Poland*, 659 F.2d 884, 896 (9th Cir. 1981); *Williams v. State*, 447 S.E.2d 676, 678 (Ga. Ct. App. 1994), an adult certification hearing, *Coffin v. State*, 850 S.W.2d 608, 610-11 (Tex. App. 1993), an extradition hearing, *Prater v. State*, 253 S.E.2d 223, 229 (Ga. Ct. App. 1979), and a grand jury proceeding where the testimony was later sought to be admitted by the defendant, *United States v. McFall*, 558 F.3d 951, 963

-12-

(9th Cir. 2009) (noting that Rule 804(b)(1) "does not require an identical quantum of motivation").

The defendant cites *People v. Brown*, 870 N.E.2d 1033 (Ill. App. Ct. 2007), in support of his contention that a defendant's motive to cross-examine a witness at a bond hearing is not sufficiently similar to the motive during trial. But *Brown* is clearly distinguishable. In that case, the sole issue before the court during the prior hearing was whether the defendant had violated a condition of release. The court inappropriately expanded the scope of the bond violation hearing by permitting the government to question the witness about the underlying offense, and the defendant had no motive to cross-examine the witness regarding those facts since they were not at all relevant to the issue at hand. The Illinois court therefore held that the testimony of the witness from the bond violation hearing was impermissibly admitted at the defendant's subsequent trial. *Id.* at 1039.

Other cases cited in *Brown* are also distinguishable on the facts. *See People v. Vera*, 395 N.W.2d 339, 341 (Mich. Ct. App. 1986) (affirming trial court's exclusion of testimony from a preliminary hearing where the government did not have a motive to cross-examine the witness regarding a statement she made while answering questions relevant only to the proper amount of bond); *Dickson v. State*, 636 S.E.2d 721, 724 (Ga. Ct. App. 2006) (concluding that the trial court erred in

-13-

admitting an audiotape of the deceased witness's interview with an investigator, finding that it was not adequate that the defendant had an opportunity to cross-examine that witness during a bond hearing).

"[T]he similar-motive inquiry . . . is inherently a *factual* inquiry, depending in part on the similarity of the underlying issues and on the context of the . . . questioning." *Salerno*, 505 U.S. at 326. The facts in this case show that the defendant had a similar motive to question Glass about the defendant's working hours at both the bond hearing and the subsequent trial. Therefore, Glass's prior testimony was properly admitted under Federal Rule of Evidence 804(b)(1), and its admission did not violate the Sixth Amendment's Confrontation Clause.

Even if the testimony had been admitted in error, it would not be in the interests of justice to grant the motion for a new trial.[5] First, the jury had already heard about the discrepancies between Glass's prior testimony and the testimony of

---

[5] "Any error. . . that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). A Confrontation Clause violation may be found harmless. *United States v. Banks*, 482 F.3d 733, 741 (4th Cir. 2007) (citing *United States v. Khan*, 461 F.3d 477, 496 (4th Cir. 2006)). The Fourth Circuit will find an error harmless if it is "able to say with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Id.* at 741-42 (quoting *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997)). *See id.* at 742 (finding *Crawford* error harmless after considering importance of erroneously admitted testimonial evidence and strength of government's case); *Khan*, 461 F.3d at 496 (same); *United States v. Bryant*, No. 06-4977, 2008 WL 5070972, at *5 (4th Cir. Nov. 25, 2008) (unpublished) (same).

-14-

his son and daughter-in-law at trial through the government's proper cross-examination of those witnesses. The admission of Glass's testimony from the bond hearing was therefore cumulative of other admissible evidence on that issue.

Second, any dispute about the defendant's duties at Glass Machinery was minor and could not have substantially swayed the jury's verdict. Glass's son testified that Glass Machinery performed snow removal for the Virginia Department of Transportation, and that the defendant had assisted with snow removal at night. The defendant's work records, which were admitted into evidence, specified the dates on which he performed snow removal and the total number of hours he worked on each date, but did not specify the time of day work was completed. Glass's son indicated that he could have determined the time of day the work was completed by consulting "[t]he daily field sheet," but that he did not bring that information to court and could not say what time the defendant's work was conducted. (Trial Tr. vol. 3, 6, Dec. 10, 2008.) Glass's son also testified that the defendant had occasionally assisted Glass with personal errands during evening hours, and that Glass and the defendant had taken several overnight fishing trips together on weekends, but he did not specify which weekends.[6]

---

[6] Glass's daughter-in-law also testified that Glass and the defendant had taken weekend fishing trips, but she could not point to which weekends.

-15-

Although there were some differences between Glass's testimony at the bond hearing and his son's testimony at trial, the most important fact relevant to the defendant's alibi defense was not in dispute: the defendant occasionally worked during evening hours.[7] The jury heard a portion of Glass's testimony where he affirmatively stated that this was so. (Trial Tr. vol. 1, 9, Dec. 10, 2008) ("A lot of times he sees I get home all right, he comes home in the evening after I get home to see if I need anything.").

On the other hand, there was no direct evidence that the defendant was working in the evening or was out of town on a fishing trip on the specific dates that the offending images were accessed. Considered in its totality, along with all of the other evidence in the case, Glass's testimony could not have substantially swayed the jury's conclusion that the defendant was available to access and email the images of child pornography during evening and late-night hours on the relevant dates.

Third, as described above, the government presented substantial evidence that the defendant was the person who emailed, downloaded, and accessed the images of child pornography.

---

[7] This was relevant because, as described above, all of the twenty-six offending images were accessed between 6:21 p.m. and 1:53 a.m., and all but two were emailed or accessed after 9:02 p.m.

IV

For the foregoing reasons, it is hereby **ORDERED** that the defendant's Motion for a Judgment of Acquittal and Motion for New Trial are DENIED.

ENTER: June 2, 2009

/s/ JAMES P. JONES
Chief United States District Judge