# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 2:07CR00004 |
| v.  ) | **OPINION** |
| ) | |
| **ROBERT FRANKLIN DOYLE, JR.**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant.  ) | |

*Jennifer R. Bockhorst*, Assistant United States Attorney, Abingdon, Virginia, and *Samuel E. Fishel, IV*, Special Assistant United States Attorney, Richmond, Virginia, *for United States*; *John E. Jessee*, Jessee & Read, P.C., Abingdon, Virginia, *for Defendant*.

In this criminal case, I find that I must reference the sentencing guidelines in effect on the date of the offense because application of the current guidelines in this case would violate the Ex Post Facto Clause of the Constitution.

I

The defendant Robert Franklin Doyle, Jr., was convicted by a jury of knowingly receiving and knowingly possessing child pornography in violation of 18 U.S.C.A. §§ 2252A(a)(2)(A), (a)(5)(B), and (b)(2) (West Supp. 2008) (Counts One and Two), and knowingly transporting child pornography in violation of 18 U.S.C.A. §§ 2252A(a)(1) and (b)(1) (West Supp. 2008) (Counts Three, Four, and Five).  I

denied the defendant's post-trial motions for judgment of acquittal and for a new trial. *United States v. Doyle*, No. 2:07CR00004, 2009 WL 1529821 (W.D. Va. June 2, 2009). Prior to sentencing, the government objected to the conclusion in the Presentence Investigation Report ("PSR") that use of the 2008 Guidelines Manual would violate the Ex Post Facto Clause of the Constitution. The probation officer instead applied the 2003 Guidelines Manual, which was the manual in effect on the date of the defendant's offenses. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.11(b)(1) (2008).

For the reasons explained below, I find that application of the 2008 guidelines would violate the Ex Post Facto Clause in this case; therefore, I must calculate the defendant's guidelines range according to the 2003 Guidelines Manual in effect on the date of his offenses of conviction.

II

The Ex Post Facto Clause, U.S. Const. art. I, § 9, cl. 3, states that "No . . . ex post facto Law shall be passed." *See also* art. I, § 10, cl. 1. The framers included this provision in the Constitution to serve two purposes: (1) "to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation," and (2) to "give fair warning" of legislative enactments' effect and "permit

-2-

individuals to rely on their meaning until explicitly changed." *Miller v. Florida*, 482 U.S. 423, 429-30 (1987) (citing *Calder v. Bull*, 3 Dall. 386, 388-89 (1789)) (internal quote omitted). The Ex Post Facto Clause prohibits the retroactive application of "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Miller*, 482 U.S. at 429 (quoting *Calder*, 3 Dall. at 390); *see also Garner v. Jones*, 529 U.S. 244, 249 (2000) ("One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." ).

In *Miller v. Florida*, the Supreme Court held that it was a violation of the Ex Post Facto Clause for Florida to apply its updated sentencing guidelines where the new guidelines range would be lengthier than the guidelines in effect at the time of the offense. The court reasoned that the law was ex post facto because it was retrospective and it disadvantaged the offender affected by it. *Miller*, 482 U.S. at 430. Every circuit court, including the Fourth Circuit, thereafter concluded that the federal sentencing guidelines were held to the same standard. *See, e.g.*, *United States v. Morrow*, 925 F.2d 779, 782-83 (4th Cir. 1991). U.S.S.G. § 1B1.11 states that the guidelines in effect at sentencing apply unless the court determines that application of the current guidelines would violate the Ex Post Facto Clause, in which case the guidelines in effect at the time of the offense apply.

Since the remedial opinion in *United States v. Booker*, 543 U.S. 220, 244-68 (2005), made the federal sentencing guidelines advisory, the continued existence of the ex post facto concern has been called into doubt. The Seventh Circuit held in *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006), that "the ex post facto clause should apply only to laws and regulations that bind rather than advise . . . ." Speaking for the court, Judge Posner reasoned that "the purpose of the clause is to protect people against . . . being punished more severely than their crime was punishable when committed . . . . not to enable criminals to calculate with precision the punishments that might be imposed on them." *Id.* at 793. He suggested that not every regulation traceable to Congress[1] that disadvantages a criminal defendant is thereby an ex post facto law. *Id.* at 794.

Judge Posner considered that a district judge's "choice of sentence, whether inside or outside the guideline range, is discretionary and subject therefore to only light appellate review. The applicable guideline nudges him toward the sentencing range, but his freedom to impose a reasonable sentence outside the range is unfettered." *Id.* at 795 (internal citations omitted). He noted further that even if a

---

[1] The Sentencing Commission is empowered to submit amendments to the guidelines to Congress no later than May 1 of each year. The amendments become effective on November 1 of the same year unless "modified or disapproved by Act of Congress." 28 U.S.C.A. § 994(p) (West 2006).

-4-

judge could not technically apply the current guidelines due to ex post facto concerns, the judge would still be influenced by the information embodied in the new guidelines when selecting a sentence consistent with 18 U.S.C.A. § 3553(a) (West Supp. 2008). *Id.*

To the contrary, the D.C. Circuit recently held that ex post facto concerns continue to exist post-*Booker*. *United States v. Turner*, 548 F.3d 1094, 1100 (D.C. Cir. 2008). For the court, Judge Randolph reasoned that after *Demaree*, the Supreme Court confirmed that appellate courts may apply a presumption of reasonableness to a district court sentence within the guidelines. *Id.* at 1099 (citing *Rita v. United States*, 551 U.S. 338 (2007)). As a result, judges are more likely to sentence within the guidelines, and Sentencing Commission statistics show that most federal sentences fall within guidelines ranges even after *Booker*. *Id.*

Judge Randolph noted that regulation of discretion, such as the discretion of a parole board, does not foreclose an ex post facto claim. *Id.* at 1100. "It is enough that using the 2006 Guidelines created a substantial risk that Turner's sentence was more severe, thus resulting in a violation of the Ex Post Facto Clause." *Id.*

Several other circuits have continued to apply the Ex Post Facto Clause to the advisory guidelines without directly addressing the impact of *Booker*. *See United States v. Gilman*, 478 F.3d 440, 449 (1st Cir. 2007) ("Although we note that the Court

of Appeals for the Seventh Circuit has concluded that *Booker*'s ruling that the guidelines are advisory rather than mandatory carries with it the elimination of ex post facto concerns, the issue is doubtful in this circuit.") (internal citation omitted); *United States v. Wood*, 486 F.3d 781, 790-91 (3d Cir. 2007) (finding plain error where government conceded guidelines in effect on date of offense should have been applied); *United States v. Duane*, 533 F.3d 441, 446-47 (6th Cir. 2008) ("assum[ing] *arguendo* that a retroactive change to the Guidelines could implicate the *Ex Post Facto* Clause"); *United States v. Carter*, 490 F.3d 641, 643 (8th Cir. 2007) (addressing defendant's ex post facto claim, but noting the decision in *Demaree*); *United States v. Rising Sun*, 522 F.3d 989, 992 n.1 (9th Cir. 2008) (noting that district court was correct to apply guidelines in effect on date of offense to avoid ex post facto violation).

The law in the Fourth Circuit is uncertain. The Fourth Circuit has assumed that the Ex Post Facto Clause still applies post-*Booker*. *See United States v. Sinclair*, 293 F. App'x 235, 236 (4th Cir 2008) (unpublished); *United States v. Iskander*, 407 F.3d 232, 242 n.8 (4th Cir. 2005). But when the issue was presented in *United States v. Myers*, 553 F.3d 328 (4th Cir. 2009), the court avoided deciding it. *See id.* at 333 n.2 (noting that it need not address government's alternate theory based on *Demaree* because enhancement from 2006 guidelines also would have applied under 2005

-6-

guidelines in effect at time of offense). At least one district court in this circuit has found that the Ex Post Facto Clause still applies post-*Booker*. *United States v. Lewis*, 603 F. Supp. 2d 874, 879 (E.D. Va. 2009).

After due consideration, I find that the advisory guidelines still implicate the Ex Post Facto Clause.

There are two critical elements of a viable ex post facto claim. First, the law at issue "must be retrospective, that is, it must apply to events occurring before its enactment." *Miller*, 482 U.S. at 430 (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)). Second, it must "increase[] the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995). Related to the second element, the Supreme Court has held that "no *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'" *Miller*, 482 U.S. at 430 (quoting *Dobbert v. Florida*, 432 U.S. 282, 293 (1977)).

A law is retrospective if it "appl[ies] to events occurring before its enactment." *Miller*, 482 U.S. at 430. Here, as in *Miller*, "[a]pplication of the revised guidelines law in [the defendant's] case clearly satisfies this standard." *Id.* In *Miller*, the state argued that the change in the guidelines was not retrospective because the sentencing statute "on its face provides for continuous review and recommendation of changes

-7-

to the guidelines." *Id.* at 431 (internal quote omitted). But the Court concluded, "The constitutional prohibition against *ex post facto* laws cannot be avoided merely by adding to a law notice that it might be changed." *Id.* The same holds true for the federal sentencing guidelines, even now that they are advisory. Notice that the guidelines may change is not sufficient to avoid an ex post facto violation.

The second prong of the ex post facto test has evolved over time. When *Miller* was decided, the query was whether the law "disadvantage[d] the offender affected by it." *Miller*, 482 U.S. at 430 (internal quote omitted). After *Collins v. Youngblood*, 497 U.S. 37, 41-43 (1990), "the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506 n.3. "[T]he question of what legislative adjustments will be held to be of sufficient moment to transgress the constitutional prohibition *must* be a matter of degree." *Id.* at 509 (internal quotes omitted). A law is therefore ex post facto if it "creates a significant risk" of prolonging the defendant's incarceration, *Garner v. Jones*, 529 U.S. at 251, as opposed to a risk that is merely "speculative and attenuated," *Morales*, 514 U.S. at 514.

-8-

In the Fourth Circuit, the guidelines, although advisory, are still an integral part of sentencing. A district court imposing a sentence must engage in a multi-step process. *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). The court must initially determine, after making appropriate findings of fact, the applicable guidelines range. *Id.* The court should then consider "whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence that does serve those factors." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006). "The district court must articulate the reasons for the sentence imposed, particularly explaining any departure or variance from the guideline range." *Moreland*, 437 F. 3d at 432. Although all sentences, whether within or outside the guidelines, are reviewed for an abuse of discretion, and district courts may not presume that a within-guidelines sentence is reasonable, *Gall v. United States*, 128 S. Ct. 586, 596-97, 600 (2007); *see also Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009), the Fourth Circuit permissibly applies a presumption of reasonableness to within-guidelines sentences on appeal, *Green*, 436 F.3d at 457; *see Rita v. United States*, 127 S. Ct. 2456, 2459 (2007).

After *Booker*, the Fourth Circuit stated that "while we believe that the appropriate circumstances for imposing a sentence outside the guideline range will depend on the facts of individual cases, we have no reason to doubt that most

sentences will continue to fall within the applicable guideline range." *United States v. White*, 405 F.3d 208, 219 (4th Cir. 2005). This prediction has held true. According to Sentencing Commission statistics, the "rate of conformance with the sentencing guidelines," defined as the combined rate of within-guideline and government-sponsored below-guideline sentences in all federal district courts, was 85.9% in the first calendar year after *Booker*, 86.3% in 2006, and 86.7% in 2007. James R. Dillon, *Doubting Demaree: The Application of Ex Post Facto Principles to the United States Sentencing Guidelines After United States v. Booker*, 110 W. Va. L. Rev. 1033, 1090 (2008). From December 2007 to September 2008, 84.6% of sentences imposed in the Fourth Circuit conformed with the guidelines. Daniel M. Levy, Note, *Defending Demaree: The Ex Post Facto Clause's Lack of Control over the Federal Sentencing Guidelines After Booker*, 77 Fordham L. Rev. 2623, 2646 tbl.2 (2009).[2]

The advisory guidelines are distinguishable from the guidelines in *Miller* in several respects. A variance from the Florida guidelines was possible, but much more onerous than in the federal system today. *Miller*, 482 U.S. at 432-33 (explaining that a sentence within the Florida guidelines was unappealable, and that the sentencing court would have had to provide clear and convincing reasons in writing for any

---

[2] Interestingly, in the Seventh Circuit only 75.1% of sentences during that time period were in conformity with the guidelines. In the D.C. Circuit, 81.2% of sentences conformed with the guidelines. *Id.*

-10-

departure). The advisory federal guidelines could be considered guideposts for the exercise of judicial discretion. *Compare Miller*, 482 U.S. at 434. But even a rule guiding discretion may be ex post facto if it results in a significant risk of prolonging a defendant's sentence.[3] And the defendant need not "show definitively that he would have gotten a lesser sentence" under the previous guidelines in order to have a valid ex post facto claim. *Miller*, 482 U.S. at 432 (citing *Lindsey v. Washington*, 301 U.S. 397, 401-02 (1937)) (internal quote omitted).

The imposition of lengthier guidelines creates a substantial risk that the defendant will receive a longer sentence. District courts are obliged to consider the guidelines. *See* § 3553(a)(4). The guidelines are of significant legal consequence and

---

[3] The Supreme Court's analysis of statutes and rules governing parole is instructive in this regard. The Court has upheld amendments to rules guiding discretion, but only after concluding that there was not a significant risk of increased punishment. *See Morales*, 514 U.S. at 509-14 (finding no ex post facto violation where California enacted legislation permitting parole boards to defer suitability hearings for up to three years instead of holding a hearing each year for prisoners convicted of multiple murders because there was not a sufficient risk that the amendment would increase the punishment of those offenders); *see also Garner v. Jones*, 529 U.S. at 257 (reversing court of appeals where similar amendment to Georgia board of parole rules was at issue because its "analysis failed to reveal whether the amendment . . . in its operation, created a significant risk of increased punishment for respondent"); *cf. Weaver*, 450 U.S. at 31 (holding that a new statutory formula reducing amount of "gain time" credit inmates received for good behavior could not be applied to prisoners convicted for acts committed before the provision's effective date without violating Ex Post Facto Clause); *Lynce v. Mathis*, 519 U.S. 433, 440-47 (1997) (concluding that retroactive cancellation of all provisional credits awarded to inmates convicted of murder or attempted murder violated Ex Post Facto Clause where revocation resulted in petitioner's re-arrest and continued incarceration).

-11-

have a real impact on defendants' sentences. Statistics demonstrate that district courts, particularly those in the Fourth Circuit, continue to sentence the vast majority of defendants to within-guidelines sentences. As the D.C. Circuit noted, "Practically speaking, applicable Sentencing Guidelines provide a starting point or 'anchor' for judges and are likely to influence the sentences judges impose." *Turner*, 548 F.3d at 1099. A change in the guidelines range is not a mere change in the mode of procedure; rather, it is a substantive change likely to alter the quantum of punishment imposed.

Under the 2003 guidelines, the defendant here would have a base offense level of seventeen, U.S.S.G. § 2G2.2(a) (2003), and a total offense level of thirty-six, resulting in an advisory guidelines range of 188 to 235 months. Under the 2008 guidelines, the defendant would have a base offense level of eighteen, U.S.S.G. § 2G2.2(a)(1) (2008), and a total offense level of thirty-seven, resulting in an advisory guidelines range of 210 to 262 months. Retrospective application of the 2008 guidelines in this case would result in a substantial risk that the defendant would receive a lengthier sentence, a violation of the Ex Post Facto Clause. I therefore must calculate the defendant's guidelines range according to the 2003 Guidelines Manual in effect on the date of his offenses of conviction.

III

For the foregoing reasons, the government's objection to the PSR is overruled.

DATED: June 24, 2009

/s/ JAMES P. JONES
Chief United States District Judge